IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE O'BRIEN | : | No. 3:18-cv-1320 |
| | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | |
| ROBERT AXE, and CLAIR DOLL, and | : | |
| JOHN DOE Nurse, and J. DOE Physician, | : | **AMENDED COMPLAINT** |
| All Sued In Individual Capacity, | : | |
| Defendants | : | JURY TRIAL DEMANDED |

I. INTRODUCTION

This is a pro se civil complaint filed pursuant to 42 U.S.C § 1983. In short, it stems from an incident resulting in serious injuries being inflicted upon the plaintiff by correctional officers within the York County Prison. Thereafter, medical staff were deliberately indifferent to & delayed treatment of broken bones. He now suffers long-term pain & injuries.

II. JURISDICTION & VENUE

1. The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343. This is a civil action authorized by 28 U.S.C. § 1983 to redress a deprivation, under color of state law, of rights secured by the United States Constitution.

2. The Middle District of Pennsylvania is the proper venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

III. PARTIES

3. Plaintiff ANDRE O'BRIEN was at the relevant times a pre-trial detainee at the York County Prison, 3400 Concord Road, York, PA 17402. He is now incarcerated at the State Correctional Institution at Somerset, 1600 Walters Mill Road, Somerset, PA 15510.

4. Defendant CLAIR DOLL is and was the Warden, at all relevant times, of the York County Prison. He is sued in his individual capacity.

5. Defendant ROBERT AXE is and was at all relevant times a Correction Officer employed at the York County Prison. He is sued in his individual capacity.

6. Defendant JOHN DOE NURSE was at all relevant times a Nurse providing medical services at the York County Prison. He is sued in his individual capacity.

7. Defendant J. DOE PHYSICIAN was at all relevant times a physician providing medical services at the York County Prison. He or she is sued in their individual capacity.

## III. FACTS

8. On 4/12/18, Plaintiff was a prisoner in the York County Prison.

9. Plaintiff had a pre-existing right ankle injury & has a severe right leg disability (leg has metal pins & rods surgically implanted & embedded into his bones). Both conditions physically impair the plaintiff's ability to walk. He walks with a highly noticeable and sever pendulum motion-like gate or limp. At times, he required use of a wheelchair.

10. A wheelchair was routinely provided by prison staff for use upon request by the plaintiff when he experienced any increases in pain or difficulty walking.

11. On 4/12/18, Plaintiff was escorted by Defendant Robert Axe from the plaintiff's cell to the prison's Admissions area to receive paperwork from a Deputy Sheriff.

12. Plaintiff while walking to Admissions was visibly limping due to serious & increasing pain from a pre-existing ankle injury & right leg disability.

13. Plaintiff asked Defendant Axe for use of a wheelchair.

14. Defendant Axe stated, "You can walk. You'll be alright."

15. Plaintiff and Defendant Axe then continued walking to the Admissions area.

16. While walking, another corrections officer in the area asked the plaintiff if he needs a wheelchair. Plaintiff said, "Yes."

17. That officer said he will get a wheelchair, and then left the hallway. Upon information and belief, he was going to get a wheelchair.

18. Defendant Axe refused to wait and instead immediately made the plaintiff continue to painfully walk & limp to Admissions.

19. At Admissions, the plaintiff was given his paperwork.

20. At Admissions, Plaintiff while preparing to leave again asked Defendant Axe for use of a wheelchair.

21. Plaintiff told Defendant Axe that he is experiencing serious pain and instability in his right ankle. He told Defendant Axe that his ankle is going to give out (no longer support his weight). Plaintiff had to physically lean on the window area of a holding cell due to the ankle pain & instability.

22. Plaintiff told Defendant Axe that he needs a wheelchair & a Nurse; that he needs medical aid due to pain in his ankle & leg.

23. A Lieutenant standing nearby responded by taunting Plaintiff, saying, "You'll be standing there a long time."

24. Plaintiff told Defendant Axe that he's filing a grievance against him for refusing him a wheelchair & medical aid by a nurse.

25. Defendant Axe responded by handcuffing the plaintiff's hands. Axe yanked on the handcuffs & told him to start walking.

26. Plaintiff moved forward and instantly felt sharp & debilitating pain in his right ankle. He reflexively shifted his weight to his left leg. To prevent a fall & further injury (and due to pain), he began to sit down.

27. Defendant Axe then forcibly dragged & lifted Plaintiff by the handcuffs.

28. He was then forced to walk out of Admissions and down a hallway.

29. While being forced to walk, Plaintiff's ankle injury & pain caused him to stumble and several times his ankle/leg gave out.

30. Defendant Axe, during the walk, continued to ignore plaintiff's outcries of pain & requests for a wheelchair & nurse.

31. Plaintiff told Defendant Axe he's going to be sued for what he's doing to him.

32. Plaintiff was stopped & then forced face-first into & held against a wall.

33. Defendant Axe then, without getting proper authorization per policy, had other officers get a Emergency Restraint Chair ("ERC").

34. Defendant Axe forcibly shoved Plaintiff into the ERC.

35. Plaintiff was then strapped-in by the ERC's waist restraint.

36. Plaintiff's hands (still handcuffed) were forced above his head.

37. Defendant Axe then removed Plaintiff's handcuffs, immediately grabbed Plaintiff's left wrist, and falsely claimed Plaintiff is resisting.

38. This false protestation caused another officer to grab and hold plaintiff's right arm & wrist.

39. Defendant Axe then forcibly began to brutally, maliciously and sadistically twist & bend the plaintiff's left wrist.

40. Reflexively, plaintiff squirmed & yelled in pain, and repeatedly cried out to Defendant Axe that he's breaking his arm.

41. In response, Defendant Axe applied more force.

4

42. The unnecessary & excessive force used caused serious injuries to the plaintiff's left arm-wrist.

43. A snap-pop noise was heard, and plaintiff's wrist went limp & flexed far past anyone's normal range of motion.

44. Plaintiff saw that Defendant Axe clearly, visibly and unmistakeably noticed & realized that he severely injured the plaintiff's wrist.

45. Plaintiff yelled out in pain, and repeatedly yelled "You broke my arm."

46. Defendant Axe then applied more force and increased the twisting and bending of the plaintiff's clearly & noticeably injured arm-wrist.

47. Plaintiff reflexively, self-protectively continued to squirm & cry out in agony due to the increased use of force by Defendant Axe on plaintiff's severely injured arm-wrist.

48. An officer holding the plaintiff's right wrist and arm then applied more force; he sprained the wrist, requiring medical care.

49. Someone eventually said "enough" or "that's enough."

50. Defendant Axe stopped twisting and bending the plaintiff's wrist and easily pushed his left arm down to his side to be restrained by a strap on the ERC.

51. Plaintiff kept up his outcries of pain & broken bones.

52. Eventually, someone said "Take him to medical."

53. At Medical, a male nurse (John Doe Nurse) asked the plaintiff if he's injured.

54. Plaintiff told the nurse that his left wrist is badly swollen, badly bruising & broken. And his right wrist hurts. He asked to be given emergency care by a doctor or at a hospital.

55. The nurse simply, offhandedly, said the swelling is probably from the handcuffs being too tight.

56. The nurse did not conduct any physical exam.

57. The nurse told officers "There's nothing wrong with him" and to take him back to his cell.

58. Lieutenant Cessna arrived at Medical's Department. He had a video camera.

59. Prison policy, procedures or protocols require officers to contact a Lieutenant (or higher rank) before using an ERC.

60. An audio-video recording must be made showing the use of force & ERC.

61. Defendant Axe & others did not follow proper ERC-use procedures.

62. Lieutenant Nicholas Cessna was notified & brought a video camera only after use of the ERC & infliction of injuries to the plaintiff.

63. Lieutenant Cessna video recorded officers returning the plaintiff to the suicide prevention segregation cell. (Plaintiff was per policy placed in this cell upon returning from a court proceeding. York County Prison has a policy of doing this to inmates who return with guilty verdicts or serious sentences.)

64. At his cell, plaintiff was removed from the ERC and placed in the cell without incident.

65. On 4/13/18, plaintiff was placed in a wheelchair and taken to the medical department for an x-ray. Afterward, he is returned to his cell via wheelchair.

66. On 4/16/18, plaintiff was placed in a wheelchair, taken to Admissions, then transported to "Ortho Urgent Care" at Wellspan Orthopedics, 25 Monument Road, Suite 290, York, PA 17403. A cast was applied to his left wrist, for broken bones. His right wrist is ace-bandaged to treat for a sprain.

67. A wheelchair is used to enter & exit the building.

68. He was then returned to prison, and via wheelchair returned to his cell.

69. On 4/28/18, he is via a wheelchair taken out of segregation and housed in general population.

70. A wheelchair was kept in the hallway for Plaintiff's use as needed.

71. A female nurse also issued the plaintiff a cane.

72. After 4-6 weeks, cast is removed at Wellspan Orthopedics. X-rays show the bones did not heal. A new cast is applied. A few weeks later it is removed after follow-up.

73. Clair Doll (Defendant) or others did not take any corrective or administrative action against Defendant Axe for, before using the ERC, not contacting a Lieutenant or superior officer for authorization to get & use the ERC, for not video recording the use of the ERC, for not following proper policy & procedures, or for refusing plaintiff's reasonable requests at Admissions for a wheelchair & medical aid staff.

74. Clair Doll, Warden, maintained or acquiesced to a custom or practice of allowing incidents in which officers ignore or violate ERC-use policy & procedures.

75. Clair Doll, Warden, routinely fails to reprimand or take adequate corrective measures with officers who violate the policy or procedures on use of an ERC.

76. Clair Doll, Warden, allowed or created a custom or practice of violations of ERC-use policy & procedures among officers who knew they would not be reprimanded, sanctioned or punished.

77. Clair Doll, Warden, allowed or created a custom or practice or policy of allowing undue delays in medical treatment to seriously injured prisoners including Plaintiff.

78. J. Doe Physician (Defendant) allowed or created a custom or practice or policy of allowing undue delays in medical treatment to seriously injured prisoners including Plaintiff.

79. J. Doe Physician failed to or allowed others not to preliminarily review X-rays for broken bones, or unnecessarily delayed plaintiff's medical care for broken bones until Monday, 4 days later.

80. John Doe Nurse (Defendant) failed to or allowed others not to preliminarily review X-rays for broken bones, or unnecessarily delayed plaintiff's medical care for broken bones until Monday, 4 days after x-rays revealed broken bones.

81. At SCI Somerset, plaintiff's medical care is ongoing at the prison and through outside medical facilities.

82. An MRI detected a chipped bone on left wrist and a torn ligament.

83. Orthopedics at Somerset Hospital (in Somerset, PA) ordered Cortisone shots, and if ineffective it will require ligament surgery.

84. To date, SCI Somerset continues to treat plaintiff's injuries.

85. To date, he still has seriously impaired use of his left hand-wrist.

86. Presently, plaintiff now suffers anxiety, depression, and sleep disturbance as a result of the assault upon him and the injuries he sustained.

## IV. EXHAUSTION OF REMEDIES

87. Plaintiff exhausted administrative remedies via York County Prison grievance M051418D.

## V. LEGAL CAPACITY

88. Gerald Funk, EA-5247, drafted this Amended Complaint. Plaintiff, as shown thus far, is unable to represent himself. Plaintiff was initially misled about who to sue and how to proceed by an employee of York County Prison and fake jailhouse lawyers. He lacked access to adequate legal resources.

## VI. LEGAL CLAIMS

89. Plaintiff realleges and incorporates by reference paragraphs 1-87.

90. Robert Axe retaliated against the Plaintiff by and through his actions as stated herein above (paras 8-52, 59-64), all of which occurred in response to the plaintiff exercising his constitutional rights to medical aid and the plaintiff's verbal notifications to Axe that he is filing a grievance & lawsuit. This violates the plaintiff's rights under the U.S. Constitution's 1st Amendment.

91. Robert Axe used unwarranted excessive force against the injured & physically disabled Plaintiff in response to his requests for a wheechair and medical aid, by and through his actions as stated herein above (paras 8-52, 59-64), where he, inter alia, unnecessarily and sadistically and maliciously bent and twisted his wrist & arm until a ligament tore and bones broke. He then ignored the serious & obvious injury and resumed his wanton assault on plaintiff's broken arm & wrist. Axe caused the plaintiff's physical injuries, pain, suffering, and emotional distress. This all violates the pretrial detainee Plaintiff's rights under the Due Process Clause of the U.S. Constitution's 14 Amendment.

92. Robert Axe was deliberately indifference to Plaintiff's serious medical needs, physical disabilities, and/or inability to ably walk, and subjected him to cruel and unusual punishment where, by and through his actions as stated herein above (paras 8-52, 59-64), Axe refused his many requests for a wheelchair & medical aid, forced him to repeatedly walk on a painful & injured ankle, and when he could no longer ably walk Mr. Axe instead of getting a wheelchair & medical aid placed the handcuffed plaintiff into a ERC and then unnecessarily, sadistically and maliciously bent and twisted his wrist & arm until a ligament tore and bones broke. He then ignored the serious & obvious injury and resumed his wanton assault on plaintiff's broken arm & wrist. Axe caused the plaintiff's physical injuries, pain, suffering, and emotional distress. This all violates the Plaintiff's rights under the U.S. Constitution's 8th Amendment.

93. John Doe Nurse was deliberately indifferent to the plaintiff's serious medical needs by refusing to examine his badly swollen & broken wrist, by ignoring his verbal complaints that he heard & felt his wrist break, by denying access to & evaluation by a doctor, by not arranging for immediate X-rays, and/or by not

recommending and arranging for immediate transport to an outside medical facility, and where he did not provide any medical treatment or immobilize the plaintiff's badly swollen & broken wrist and then told prison officers to return the still-handcuffed plaintiff to his cell where he was left to painfully suffer due to a ligament tear & broken bones left untreated for four (4) days. As a result, Plaintiff also needlessly agonized with untreated pain, suffering, and emotional distress. This all violates the Plaintiff's rights against cruel & unusual punishment under the U.S. Constitution's 8th Amendment.

94. J. Doe Physician, Medical Director, was deliberately indifferent to the plaintiff's serious medical needs by causing, allowing, and/or creating or permitting a custom or practice or policy of allowing undue delays in medical treatment to seriously injured prisoners including the plaintiff, and by failing to supervise and/or adequately supervise medical staff & nurses, and by failing to provide for and/or not personally conducting or obtaining a preliminary review of X-rays for broken bones. This caused and itself is a violation of the plaintiff's rights under the U.S. Constitution's 8th & 14th Amendments.

95. Clair Doll, Warden, was deliberately indifferent to the plaintiff's serious medical need & constitutional rights where she allowed or created a custom or practice or policy of allowing undue delays in medical treatment to seriously injured prisoners including Plaintiff. This violates the Plaintiff's rights under the U.S. Constitution's 8th Amendment.

96. Clair Doll, Warden, violated or caused others to violate the plaintiff's 8th & 14th Amendment rights where she created or allowed a custom or practice of constitutional and policy violations, by and through her failure to adequately supervise and/or reprimand or punish officers who deny inmates medical aid, apply unnecessary use of force, use excessive force, and/or engage in violations of policies & procedures on use of ERCs. This led to and caused Defendant Axe without consequence to deny plaintiff a wheelchair & medical aid, to mistreat the handcuffed plaintiff, to use unnecessary & excessive force causing broken bones, to without proper authority initiate an unsupervised & unauthorized use of an ERC, and to violate policy & procedures on use of an ERC. This all caused, led to and/or itself is a violation of the plaintiff's constitutional rights under the U.S. Constitution's 8th & 14 Amendments.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff asks that this court enter judgment:

97. Granting Plaintiff compensatory damages in the amount of $3,000,000 against each defendant, jointly and severally.

98. Plaintiff seeks punitive damages in the amount of $3,000,000. Plaintiff seeks these damages against each defendant, jointly and severally.

99. Plaintiff seeks a jury trial on all triable issues.

100. Any additional relief this court deems just, proper, and equitable.

DATED: October 22, 2019        By: *Andre O'Brien*
                                   Andre O'Brien
                                   NL-8200
                                   1600 Walters Mill Road
                                   Somerset, PA 15510

## VERIFICATION

I have read the foregoing amended complaint and hereby verify that the matters alleged therein are true and accurate to the best of my knowledge, information and belief, accept as to matters alleged upon information and belief and for which I believe to be true and accurate. I certify under penalty of perjury that the foregoing is true and correct.

Executed at SCI Somerset, Pennsylvania on October 22, 2019


By: *Andre O'Brien*
    Andre O'Brien

11